at Al's, 142415. Mr. Wayne, whenever you're ready, we're glad to hear from you. May it please the Court, Charles Wayne for Petitioner Deltek. At the threshold, this that were made by the Administrative Law Judge and the Administrative Review Board, and each concerns a failure to apply a fundamental principle of employment law in this circuit. The first is a failure to hold that the complainant below engaged in conduct that constituted an intervening event that severed any conceivable causal connection between the alleged protected activity and her termination. How is that an error of law? I did not see anywhere in the record that the district court determined as a matter of law that the court could not find an intervening factor breaking the chain of causation, or that that wasn't a legitimate basis to find a break in the chain of causation. It seemed to me that the court was applying the facts and determining that there was no actual intervening factor in this case. I'm of law was the failure to apply that particular principle of law. And you are correct that the Administrative Law Judge, summarily affirmed by the Administrative Review Board, did not address the point. In fact, what the Administrative Law Judge used, as we state in our briefs, was fallacious logic. That is, that the SEC complaint led to the complainant's medical issues, which led to her paid leave, which led to settlement negotiations. But now that goes to causation, which is a separate issue than truth. But we're saying that the causation, which the complainant had the burden of proving, that that was destroyed by the intervening event of her own actions on October 26, 2009. The ALJ said that's not why she was fired, right? That that was a pretext. So where's the intervening event? The intervening event, well, then it's correct that that's what the ALJ found. The intervening event was her appearance that day, and what the Human Resources Director termed to be her erratic and illogical behavior. Right, but the ALJ said it didn't happen that way. So I guess even if there is, I guess I'm just sort of following up. It seems like she said there was no intervening event as a matter of fact. I don't disagree with you, Judge Harris. But that brings, and since you're there, that brings the second error of law, which is substitution of judgment by the Administrative Law Judge, as affirmed by the Administrative Review Board, the substitution of her judgment for that of the Human Resources Director of Delta. And again, that goes against this long-held principle of law in this circuit and other circuits, that courts are not to act. This is as to the impact of the intervening event. Correct. Well, they're tied together in the sense that, as this court has held repeatedly, courts are not to act as super-personnel departments, second-guessing the decisions of Human Resources personnel. But we've also said that they're supposed to consider whether an explanation offered up is pretextual. That is correct. And here, that is correct. But here, there was no pretext. Delta's evidence, there was no evidence of pretext, Judge Harris. So really, your argument is that this is wrong as a matter of fact. There's not substantial evidence supporting this factual determination by the ALJ? Because it would just be helpful. I mean, if that's what we're talking about, we should talk about it in those terms. That's certainly the way the government and the intervener characterized the issues. I would not characterize it that way. But you just said there was no pretext. That sounds like a factual challenge about the ALJ. But isn't your analysis of this as a question of law, wouldn't that scenario be if the ALJ had concluded that, as a matter of policy, a company that decides it's someone who is within the employee structure should not be fired, if she determined that that's a bad policy? But here, it seems as if, if she had found that there was that type of activity, she may well have agreed with the personnel decision. But she just said that those facts never happened, that there was no disruptive behavior, that the person was exceedingly polite on the recording that she listened to. So the problem is that she didn't say that those facts never happened, the Administrator What she did say is this. And this is both the government and the intervener say this in their briefs, but it's not so. The ALJ did not find Ms. Courtright, the Human Resources Director, unworthy of belief at the trial. Rather, in the ALJ's own words and her opinion, she, quote, listened to the tape of the October 26 meeting more than once, unquote, and concluded, quote, I do not agree with Courtright's I couldn't think of a better example of the prohibited second guessing in which courts are not supposed to engage. She didn't say, I don't believe it happened. I don't believe that Ms. Gunther showed up and acted in a certain way. Rather, she said, and this was on tape because Ms. Gunther was secretly recording it, she said, I listened to the tape, and I disagree with the Human Resources Director characterization. That's exactly what is prohibited under the law of this circuit. So that is why I say that, particularly with regard to that, that is an error of law rather than a substantial evidence question. Moreover, So just before you go on, so I'm sure where you are, there's no doubt the events in this case were certainly out of the ordinary. But as far as the intervening event, do you agree that there was sufficient evidence that a trier effect could have determined that an intervening event did not occur to break the chain of causation? We do not agree with that. There was not sufficient evidence. That's because the ALJ acted arbitrarily, capriciously in making that determination. Arbitrary and capriciously, and we would say contrary to law, because it's contrary to I mean, she ignored the concept of an intervening event. She ignored that legal principle. So whether perhaps we're too involved in semantics here, but whether it's an issue of law or an issue of fact, it's error below to conclude that there was an intervening event, I mean that there was causation because there was an intervening event that broke the causal chain. It was the conduct, and again, this gets back to Judge Harris's point about pretext. There was no evidence of pretext. What there was was second-guessing of a human resources person with 16 years of experience by a judge, and that type of second-guessing is prohibited. So if we end up wading into the facts, I do have a question about facts relating to that. I think your position is the intervening factor was some combination of her showing up at that day and also how she conducted herself. That's correct. As to showing up that day, I wasn't completely certain what the basis was. My understanding was that Ms. Gunther had said that she was noticing her paycheck had been, she wasn't getting paid anymore, her pay was getting retracted, and her health insurance was being terminated. I believe Deltek's position was they were working on a settlement agreement with the council, but I don't believe it had been signed, certainly not by the party. So what was the basis for Deltek to start retracting her pay and terminating her health insurance before an actual settlement agreement? Wouldn't that be a legitimate reason for someone to then say, I'm going to go in and find out what's going on? It would have if there were the facts, but those were not the facts. What the evidence showed was that there was a negotiation. She had a lawyer. The separation agreement was agreed in principle, subject to negotiating final language. There was an email then on Friday, October 23rd, Ms. Gunther told her lawyers that the agreement that had been negotiated by them was unacceptable. You said agreement in principle, not yet signed. So why would that justify the company in starting to take the money back? Why wouldn't they just wait until it's signed? There was an agreement, pursuant to negotiations, her pay, she was on leave with pay. Her pay stopped on September 15th. The negotiations continued beyond September 15th. But my point is, why would they start taking the money out or even stopping the pay until you have a signed agreement? I can't say why the negotiations between Deltek and her counsel at the time proceeded the way they did, but that's what happened. I think the negotiations continued longer than expected, so her pay stopped on November 15th. Nobody's saying she didn't have the right to ask a legitimate question, but that was not her purpose in showing up that day. So your concern on the intervening event is not that she showed up at work, but how she conducted herself. You're conceding that the idea of her going there that day was legitimate. I am not conceding that because of this. So on Friday, October 23rd, when she drafted this new agreement and instructed her lawyer to send it to Deltek, which he did, and that was against his advice, as he said in an email to her, but he did it anyway. And in that email transmitting the draft, and this is on page of the Joint Appendix 179, said, please identify what date next week Ms. Gunther should return to work. That's on a Friday. The next day, they don't accept it, but they have not yet identified the day on which she should return to work. That next day, Saturday night at 5.30, Ms. Gunther sends an email to the HR director and says, I'm showing up Monday morning at 9 o'clock. The next day, Sunday, the general counsel sends an email to Ms. Gunther saying, don't come to work Monday morning at 9 o'clock. We can't talk to you. You're represented by counsel. Ms. Gunther shows up anyway, despite being instructed not to. Does it say, don't come to work? I thought it just said, if you come to work, we can't talk to you about your employment situation. Does it instruct her not to come to work? It does instruct her not to come to work. But he does say, I don't have the text in front of me, but it's on page 173 of the Joint Appendix. But he did tell her not to come to work in any of that. I thought your position was, or what your client testified to, was that your client's representative was that it wasn't that she came to work. It's what happened after she got there. That is correct. Well, I would say she wasn't supposed to come to work because her own lawyer had sent an email the Friday before and said, if this isn't acceptable, please instruct us on what they should not. You're not contending that showing up at the premises that day was a sufficient grounds for termination. We do not concede that. We do not take that position. You're correct. Yes, so that's correct. So yes, her conduct at work was what was critical. Agree. And that is true. So beyond so whether it's a mixed question of law and fact, the intervening event, substitution of judgment, these things should have resulted in a ruling for Deltec below. I know we can move off this in one second, but just the substitution of judgment thing, I'm looking at the ALJ's opinion and she says the statements Courtright made in the termination letter were not supported by the tape. Indeed, they were contradicted by the tape. I just keep going, how is this line between substitution of judgment and just the factual finding that she's not telling the truth seems so fuzzy to me. What she's talking about there, and I think if you read the entire record you should see it, what she's talking about there, she's saying, well, I don't hear the Human Resources Director saying that Ms. Gunther was being aggressive. I said, well, I don't hear that. Well, the whole point of the no super personnel department rule is that judges who are not on the scene, even if they have a tape, shouldn't be substituting their judgment for the Human Resources Director with experience and personnel. Can I just tell you my concern about this and maybe you can address it? We do charge ALJs with looking into whether explanations offered up are pretextual, and if they can't say, look, you said she was yelling. I'm listening to the tape. I don't hear any yelling. Doesn't the whole pretext inquiry just, what's left of the pretext inquiry under your understanding of what counts as a prohibited substitution of judgment? Because that's my question. Ms. Gunther, in addition to whatever, the tone of voice, which clearly the ALJ took issue with in Ms. Courtright's interpretation, she came to the office, she said she had an excuse to sit down. This is according to the evidence. She stared at Ms. Courtright's secretary for 20 minutes, made her uncomfortable, and scared her. Then in the meeting with the Assistant General Counsel and Ms. Courtright, was extremely aggressive, kept saying, do I have a job, and was assured she did, and was told by the Assistant General Counsel that he felt uncomfortable talking to her because she was represented by counsel. Then when she left, her husband, who was videotaping this whole procedure, he was outside. They parked their SUV Hummer in front of the building, blocking the entrance. No, she says there's no evidence that the Hummer was blocking traffic. I just feel like so much of this is just a... Well, in any event, regardless of the exact position of the Hummer, this was the... Ms. Courtright, the Human Resources Director, saw all this from her window. It was very short distance. That was her perception, and it was her judgment that Ms. Gunther's conduct that day warranted termination. There's absolutely nothing to connect it with. Let's back up for a minute. Deltek clearly showed, by clear and convincing evidence below, that there was no connection between the allegedly protected activity and the termination. Deltek, when she made the complaint to the SEC, saying that Deltek had engaged in fraud, Deltek fully investigated it. They put her on four months of administrative leave with pay. They held her job. They let her keep her laptop at home. They held her job open. When she got a lawyer, they said, you have three choices. You may have your old job back. You can apply for a new job within the company, or we can negotiate a separation package. All of these things run entirely contrary to the notion that the firing on October 26 was pretextual. Rather, it all points to the fact that it was her conduct on October 26 that was the sole basis for the termination. They didn't fire her in the spring of 2009. And as the government says in its brief, by the way, they didn't fire her in the spring of 2009 when it became clear she was incapable of doing her job. They didn't fire her in the spring of 2009. Now, so why don't you get to your point on this? I'm sorry. I see I'm out. Go ahead. And if you've got a final point you want to make, make it. I do have a final point. And this is, I believe, truly an issue of law, which is the failure of the administrative law judge and the Administrative Review Board to apply the after-acquired evidence doctrine to bar the entirety of the relief sought by Ms. Gunther. And we have fully briefed that. You've got time on rebuttal. Mr. Romhelt, if I said that correctly. All right. We'll hear from you. Good morning. My name is Dean Romhelt. I'm here on behalf of the respondent, the Department of Labor, Administrative Review Board. I'm sharing my time with counsel for the intervener. With respect to the intervening event issue, the ALJ, as affirmed by the ARB, did not make an error of law. The ALJ correctly recognized that an intervening event can break a causal chain and can serve to defeat a showing of causation. There was no error of law there. Let me ask you about the causation, which is obviously an element of the cause of action. In reading the ALJ's recitation of the causation factor here, it struck me that this was basically a recitation of a chronological order of events, basically reduced to the SOX complaint was there. Well, let me start by discussing the standard for causation as this Court has set forth. What's different from Title VII, what we're looking for here is whether the protected activity was a contributing factor. As this Court's held, and as the ARB has held, that's any factor that in any way or in some way tends to affect the outcome of the decision. There was more steps in the process than I think the two that you identified, and each one resulted from the other, and it was a continuous chain that started with her complaint internally and then was also to the SEC, followed by her complaint to OSHA, followed by a leave of absence as a result of her suffering adverse health effects while the investigation was going on. How do any of those things show causation other than, that would seem to be as probative of causation as the fact that her car started that day so she could get to work? It was a continuous chain of events that started with her two complaints, and one, the following step resulted, then the next step resulted. Again, it's a broad and forgiving standard. It still has to be a standard of some sort. This almost seems to be, for lack of a better expression, per se liability. It's almost like a workers' comp case. If you establish you participated in some protective act and then you were later terminated, you've proven causation. Here, it's a contributing factor standard, and the ALJ found, correctly applied the law and found, based on particular facts here, that the two complaints that she filed that constitute a protected activity over a sequence of events, one resulting from the other, contributed to her ultimate termination. And there were other things that the ALJ... Did the court basically just apply a but-for-cause standard saying, well, because of all these other things happening, if she hadn't gotten fired, if she hadn't found these alleged improprieties, then none of these things would have happened and she wouldn't have been there that day? Is that really the right way to look at the contributing factor standard? Because it would seem to me, under a but-for-causation standard, even if she had come in there that day and started a fight with someone, it still would have been... the original complaint would have been a but-for-cause, even if that was someone intervening. So is that an inappropriate standard that she applied? The ALJ has firmly argued to not apply a but-for-standard. That's not what's being argued here. I mean, it's a contributing factor. But what part of her discussion of it went beyond simple but-for analysis? Several things. First, the fact that there was not only continuous change, but a relatively short, five to six months period of time. I understand you've argued that, but I have difficulty finding that in her actual decision. She points out that temporal proximity can be a factor as a general item, but she never cites that, as far as I can tell, in her decision-making, and neither does the appeals board. I believe that the ALJ certainly cited... I would have to go back and look at the ALJ decision. Obviously, it speaks for itself. But certainly, temporal proximity is a factor to take into account when determining... Right. But if she did not apply it in this case, how are we to do that when that was never applied in the first instance? Well, I mean, this board is looking to see whether that finding and causation is supported by substantial evidence. And the ALJ certainly referenced the temporal proximity, certainly referenced it in distinguishing the Feldman case, I believe, which involved another case where the Fourth Circuit found that there was an intervening event. But also, in addition to the things that I've mentioned, there was a discussion of whether the reason was pretextual or not. And that, too... But you have to have proven causation before you get to analysis of pretext. Because if you don't prove causation, that's a required element of the cause of action. So if you haven't proven causation, pretext or not wouldn't be relevant. But pretext is not a step or an element that needs to be proven or not proven in the SOX analysis, which may be different from other employment laws. And the reasons... The ARB has said that, for example, if an employer gives shifting reasons for a termination, whether those reasons are pretextual or not, the ARB has said that in evaluating whether causation exists, that those shifting explanations, whether the explanation was pretextual or not, can be part of the causation. I mean, the way it works is... Which case says that? For example, the ARB said in the Bechtel, which is an ARB decision which was affirmed by the Second Circuit, there are a number of factors that... It's a two-step process, which may be different from, for example, the Title VII process, which is a three-step process. Ultimately, the employee has the burden of showing by the ponderance of evidence that the four elements are met, including causation. Then the employer has to avoid the relief being ordered, has the obligation to show by clear and convincing evidence that it would have terminated the employee, you know, without regard to the adverse employment, or without regard to the protected activity. If I may address the substitution of judgment point that counsel raised earlier, it's certainly... The ALJ had a duty to evaluate the truth of the reason given, and the DJAR-Net, DR-Net, I'm not going to pronounce it, the case relied on by counsel, makes that clear. All that the sort of super-personnel decisions mean is that a court can't second-guess the reason for termination, if that reason is lawful and that reason is true, so long as it is true. That's the language that's used in a DR-Net case. And what the ALJ did here was evaluate the truth of the reason given, and found that the reason given had no basis in the evidence and the facts before her. And she did not substitute her judgment, she undertook her statutory authority and statutory duty, frankly, to evaluate the reason and determine the truth of the reason. And in this case, based on the evidence, and there's substantial evidence to support it, the lack of evidence, the lack of testimony that, for example, that the Secretary, Ms. Parker, was scared she did not testify, and that all of Ms. Courtwright's characterizations were not supported by the record and the testimony, and particularly the recording. With respect to a couple of factual points that were mentioned, the email from the General Counsel of DelTex did not say, don't come in. I think, as you correctly read it, Judge Harris, said, if you come in, we can't talk to you about the term to your employment. It didn't say, don't come in. And another factual point, with respect to the breakdown and settlement negotiations, when Ms. Gunter rejected the settlement agreement, she specifically told her attorney that she would be going into the office on the 23rd. So, whatever agreement, I don't know the circumstances of the settlement negotiations, but she made it clear to her attorney that she was going in, and she gave notice, more than 24 hours in notice, to the DelTex, that she would be going into the office. With respect to the after-acquired evidence arguments raised... Before you leave that point, the opposing counsel seemed to put a lot of emphasis on a different view of the occurrence of the facts than the ALJ had for the day of determination. But wouldn't we have to determine, even if we thought the ALJ was wrong, wouldn't we depart without any substantial evidence in order to reverse it? I mean, to reverse that determination, it's not sufficient for you to find that there was substantial evidence to support the interpretation and conclusions that are asserted by the opposing counsel. That's a pretty high standard. It is a very high standard. And what you would need to determine is that there was no substantial evidence, and as I think as this Court has said, substantial evidence does not mean a preponderance of the evidence. It's certainly more than a scintilla of the evidence. But you have to determine that there wasn't even, if I may finish, you have to determine that there wasn't even the possibility that there was evidence to support that. May I address the after-acquired evidence very briefly? Very quickly. I just want to say that, first of all, the standard is a clear and convincing evidence standard. I think that ARB has interpreted that to show that relief, that the after-acquired, ARB recognizes the after-acquired evidence doctrine applies in whistleblower cases, but to show that it applies, the employer must prove by clear and convincing evidence that it was sufficiently severe that they would have terminated her for the conduct. And that's an ARB decision in Maristar Airways affirmed by the Federal Circuit. Do we have to find that the confidentiality provisions, barring disclosure of confidential material, are unenforceable as a matter of public policy in order for you to win on the after-acquired evidence issue, at least with respect to the alleged disclosures? I don't think that the court need make any broad determination with respect to that. I think what the ALJ found here was that the retention of certain documents was protected activity. And what the ARB has determined, and the ALJ applied, is that in appropriate cases where the retention of document is limited and it's not for arterial purposes, that that activity can be protected activity. Just following up on that, are you conceding then that there was clear and convincing evidence that she would have been fired for that? I don't think the ALJ made a determination either way, frankly, on that particular point. I think the ALJ simply addressed whether there was protected activity. But if we were to find, looking at the record, it doesn't seem like there's clear and convincing evidence. The ALJ didn't make that finding, and maybe remand would be appropriate, but we certainly don't think that there was that evidence there. But I don't think the ALJ actually made a finding with respect to clear and convincing evidence on that particular after-acquired evidence argument solely addressed to protected activity. Does that answer your question? I think so. Thank you. Thank you very much. Thank you. I appreciate it. Thanks for your time. Mr. Cohn. Good morning, Your Honors. Stephen Cohn for the intervener, Ms. Gunther. I just want to first address the issue of causation that was raised by the court. The judge actually found two grounds for causation. It's directly in her argument on Joint Appendix 51 and 52. The first is what was discussed by the court. The second, she has a detailed discussion of pretext in her causation argument. The reason for that is clear. In Reeves' Controlling Supreme Court Doctrine in Title VII, pretext, evidence of pretext can also be sufficient for evidence of causation. In fact, evidence of pretext can satisfy the higher burdens of proof in a Title VII case. So if this was a Title VII case, the pretext could actually, Ms. Gunther, could survive and prevail. But what we know is this is a Sox case in which Congress explicitly reduced those burdens. So obviously, if you can meet a Title VII burden, you can absolutely meet a Sox burden. Second, the question about whether this is a per se case. This case is unique on the facts. And on the facts tied into the Sox standard, it essentially is a per se case. It's not per se as a matter of law, but per se as a matter of fact. Why? Sox only requires a contributing factor. The timing here is simultaneous. Wait a minute. One of these cases, if the plaintiff shows a valid Sox complaint, and later there's termination, there's no intervening event. Is it your view that that in and of itself is sufficient to meet the causation standard? If they meet their standard under contributing factor, yes. Well, what's the difference? Between contributing factor and causation? Right. Wait a minute. I've given you the two factors. Filed a valid Sox complaint, employee was later terminated. Does that prove causation? No. But engaging in Sox protected activity shortly before the adverse action does, under the Sox standard, establish a contributing factor. So where does the ALJ find that in this case? Well, what the ALJ is saying is that the entire settlement process was a method, was dealing with her SEC concerns. They were part of the same. And that the whole triggering event was the collapse of that process. Delta clearly wanted that issue resolved in a settlement. It fell apart. So the issues of the SEC and the protected activity and the collapse of the settlement all occur within a very short period of time of her returning to work. So in terms of timing, in terms of protected activity, Ms. Gunther's participation in the OSHA proceeding, including her lawful rejection of a settlement agreement as part of an OSHA Sox proceeding, is all protected activity. So I think the judge may not have... We can assume all that. What I'm trying to get is what's the other step between filing the Sox complaint and termination of employment that's other than a chronological movement of time that shows causation? Well, it would be our position is that the participation in the Sox proceeding is simultaneous protected activity day by day. An adverse action shortly following protected activity reaches causation for the lower burdens of Sox. Because she was participating in that proceeding, everybody knew it. She takes a position that Delta clearly didn't like, i.e., I reject the settlement. I'm coming back to work. The lower standard of causation is met in the Sox case because it's occurring simultaneous. So I think that's what the judge was pointing at. Maybe she didn't dissect it, but I think the judge looked at it and said that OSHA proceeding was a protected activity. Everything she was doing in it was protected. Her rejection of the settlement was protected. You read the ALJ as saying basically she got fired because the settlement of her OSHA proceeding collapsed. It's basically instantaneous is one thing. I think that can be implied, but she didn't say it because she didn't have to say it. Exactly. She came very close to saying it, but she didn't have to say it because under the lower standards of Sox, it's the only contributing factor. And Congress and the President are so clear that the timing element, contributing factor, is much more probative than in a Title VII discrimination case. On the issue of her not wanting to return to work, that is probative again of pretext. Why? Because at the end of the day, they're arguing, oh, we told her not to come to work. I.e., there's some animus there. They don't want her to come to work. They're saying it. But read the email on October 26 on JA173. If you come to Dell Tech. It doesn't say don't come. It says if you come. So she shows up and they're angry. What could be clearer in terms of pretext and causation? So they make up excuses to fire her. It's about as clear as it can possibly get in terms of a discrimination or retaliation case. It all occurs in one day, and it's all right there. Before your time runs out, let me ask you about the front pay damages. At the time she worked, the plaintiff worked for Dell Tech, she was an entry-level type employee who was working to be a financial analyst, as I understand it, and was attending a community college on some basis. It's not clear on the record. But she gets a front pay award of four years without having to work and full payment for college for that time to the extent of it, which seems like a pretty good deal. I'd like to sign up for that. What's the basis in the record other than speculation to make that award? First of all, four years of front pay is not out of the norm when a judge, when a court awards front pay. It can easily go up to ten years. It can be, but there has to be a basis. And the record cited for that and given someone the opportunity to attend college full time seems to be a fairly novel reason. Now, the judge found that she was unable to find a comparable position. It's in the judge's analysis. The judge found that she got the job at Dell Tech probably as an anomaly. It was supposed to be a college graduate holding that position. So she got a job that generally requires a four-year degree. But she hasn't. Now she's lost that job. She's tried to get comparable employment. She cannot get it. So what the judge says is if she stayed at Dell Tech, she would have been on their college program, and it's in the record. They would have been paying her tuition letting her get that four-year degree. What had they agreed to do as part of that college reimbursement? Two years, four years? What had they already agreed before this all happened? What I know, and I can go back and look, the record's very clear, but they had a tuition reimbursement program and they were permitting her to pursue a degree. I don't know if it was two or four, but the record, I think, is very clear. Well, that's part of the problem I have with the damages award. You have an individual who has gone to community college, which is a great thing, but we don't know from this record whether that was one course a semester, one course a year, what it was directed to, and how does that translate into four years towards a bachelor's degree? And by the way, I don't have to work, which I was doing at the time I was employed by Dell Tech, and I get paid in full. What the judge did was she said a four-year degree going, if you go into college full-time, would take her four years. So if she removed herself from the workplace, worked for four years, she could then re-enter the job market to a comparable position for which she had been terminated. Remember, the position for which she had been terminated generally, if not always, required a four-year degree. If she's giving up reinstatement, as we know, she has the right to reinstatement to a comparable position. So what are you left with? If she's giving up reinstatement here, she has the right to a comparable position in another job, the judge says, well, take four years for you to get that comparable position. She had to work, she was going to school part-time, but none of that shows up in this front pay award. That's the nexus between that's what I'm having a tough time following. But that's because she was holding a position that required a four-year degree. And when she applied for the job, it said that in the paper, you need to have a four-year degree. So all the judge is doing is using that four-year degree, four years of front pay, as a benchmark, a reasonable benchmark to justify what is often hard to figure out how to justify front pay award. I will state that it's totally reasonable, and I think on this record, there's only two ways Ms. Gunther gets a comparable job for which is her right. One, she gets a four-year degree paid for by front pay and she gets the job she had. Or two, she gets reinstatement. So if this court wants to vacate the front pay award and remand it for reinstatement and back pay, I'm sure Ms. Gunther will not object to that. But I will state for the record, her reasoning was sound based on substantial evidence of the need for a four-year degree to meet that criteria for comparable employment and it should be sustained. So DelTec has not offered reinstatement, is that right? They never did. At the trial, the parties both agreed. I thought they had agreed there would be no reinstatement. There's no presumption for or against either party. Yeah, they both agreed to no reinstatement. The judge reluctantly went for the front pay analysis. Thank you very much. Thank you. Mr. Wang, you have some time on rebuttal. So opposing counsel has said that as far as causation is concerned that the separate proof of pretext is sufficient to establish causation. Do you agree or disagree with that proposition? Disagree with that. There's nothing in the law to support that. Certainly not in Sarbanes-Oxley. And as a matter of evidence this notion that the settlement process was somehow part of the Sarbanes-Oxley protected activity is also wrong. The, DelTec was willing to, as I said, DelTec gave her three choices. Come back to your old job and they reserved her job for her. Apply for a new job within the company or enter into a separation agreement. There's absolutely nothing having to do, and that's long after DelTec, not long after, but DelTec had determined after an extensive investigation that there was nothing to her allegations of conspiracy and that DelTec had somehow violated the law by conspiring to not pay part of its phone bill. And that investigation was conducted by the general counsel of DelTec, a veteran of the SEC's general counsel's office with 25 years experience working for public companies. So there's nothing to it. So to say that this is somehow connected is simply wrong. I would like to correct a factual point and error that Mr. Cohn just made, which is when Ms. Gunther applied for a job, she applied for, this is in our brief, the main brief at page 8 with the citations to the record, she applied for senior financial analyst, but they determined she lacked the necessary background. So they offered and she accepted an entry level position called financial analyst, which did not require a college degree. And I heard Mr. Cohn say that her position did require a college degree. But let me say this. The what both the government and the intervener wanted would unfairly handcuff employers dealing with employees whom they view pose a safety threat. And that's what we have here. And that is particularly troubling in this day and age. And here the human resources director of DelTec should and under the law did have the discretion to do as she did. And briefly with regard to the protected activity as a whistleblower, the so-called whistleblower's privilege, we fully briefed that. Well you make a good point there. But the ALJ also stated in her opinion that even though things seemed kind of bizarre, the secretary who said that she was frightened by the point there's no testimony on that. There's no testimony from any of the other employees other than the human relations director as to their reaction to that day. That it was more of a failure of proof on the part of the employer than some sort of a rejection of a policy concern for workplace safety. Well I would have to disagree with Judge Agee with your characterization of the evidence because the assistant general counsel did in fact testify. He was there at the meeting, number one. Number two, the evidence from the secretary, which came, did come in through Ms. Courtright, the human resources director, was admissible because it went to show that, it went to show the basis for why Ms. Courtright acted as she did and it was properly admitted by. But Ms. Gunther also testified too and said that she was staying in that area because she didn't want to go to the conference room. She thought that Ms. Courtright would be back very shortly and that I don't think there's any dispute that at most she was looking at somebody. There were no threatening gestures of any kind. She did testify that way. That is true. But this goes to the larger point as to why the human resources director on the site should be given the benefit of the law as it exists in this circuit and other circuits. That court shouldn't be second-guessing this type of decision. I come back to my concern about what happens to the pretext inquiry if it's going to be enough. Anytime someone gets fired for someone to say I was scared and an ALJ or a district court judge can't look behind that because then people can fire people for any reason they want and say in this day and age I was just scared. That guy looked at me funny. That can't be the rule. And I'm not arguing that it should be the rule. There was other evidence. It's stated already. It's been set forth in the brief. It's clear that Ms. Gunther returned to work that day, not with the intent to return to DelTec that day, not with a good faith intent returning to work. I mean, remember, her husband was accompanying her, videotaping. It's a good thing she made a tape, right? Because the ALJ found out that everything the HR director was saying was contradicted by the tape. So it seems weird to fault her now for thinking she might need a record. I would say that the ALJ did not find that everything was contradicted. What the ALJ said specifically in her opinion was, I listened to it and I have a different view. That's what the law prohibits. Can I ask one other question regarding the after-acquired evidence. On the confidentiality of documents, is it your position that the records were, that sending them to her personal email was a violation of the policy or the fact that she disclosed them to the SEC in her complaint? She didn't disclose them. Or wherever she filed it. I don't recall exactly. It was taking them off the premises, however she shared it with her husband. Well, I thought she testified she hadn't shared, I mean they shared an email account. But the policy itself states it says that employees have no reasonable expectation of privacy in any DelTec information, whether stored on DelTec supply computer equipment or personally owned equipment. So where is it in the record regarding the policy that employees are not allowed to work on DelTec business on their home computers and their home systems? That seems to be what we've got, is it was sent to her personal account as perhaps policy implies some people may do. So is it that act of sending it to her personal account or is it just the fact that she put it in her complaint later? It is specifically prohibited that you're not allowed to take information from the DelTec system and send it either to your personal account and it specifically says you shall not share it with third persons and it specifically mentions family members. That's in the code of business sentence. Prohibiting that specific... But my point is the policy certainly strongly implies that DelTec equipment will be documents will be on personally owned equipment at times. Because it warns them they don't have a reasonable expectation of privacy in that. Rather than saying it will never be on your personal computer anyway so we don't need to get into that issue. So that certainly gives me the strong impression that DelTec allowed employees to put stuff on their home computer for work purposes. And DelTec may well have but the point being that it was it was taken without authorization and was disclosed to third persons her husband and others outside whether it was including the SEC. So yes I agree with your point with regard to that. But you think that disclosing to the SEC is a violation even through this complaint process? I would say yes. I mean the and this is a an issue that's been dealt with from time to time in this circuit including in the JDSU case which was a Sarbanes-Oxley case where in the frequently cited case where Judge Ellis held that Sarbanes-Oxley is not a license to steal documents and break contracts. And that decision was followed in the Ninth Circuit. There are other decisions that the Administrative Review Board has but there's no general rule even within the Department of Labor that just because you claim to be a whistleblower you can take whatever you want. The VALJ didn't say because you claim to be a whistleblower you can take whatever you want, right? I mean the rule she crafted was far narrower than that. She did though, she did adopt a broad public policy exception however which the Department of Labor has not done. But she did that. No court has done that. In what sense is it broad? It's broad in the sense that she said as long as you're taking documents in furtherance of your whistleblowing act. They're directly related to your claim. Yes, you can do that. No court has held that. And that's broader than even decisions within the Department of Labor to date. I guess it's hard for me to see how it could be otherwise. Like if you had a company policy that said you can't tell the SEC if you see us doing anything wrong, you couldn't turn around and say well that's after acquired evidence. It turns out she told the SEC. So how is this different? Okay, it's different because well first of all what you what your Honor just said is in fact was a subject of an SEC regulation that came out a number of months ago and said you can't that's exactly the sort of thing you can't do. You can't tell your employees who participate in an internal investigation that they're not allowed to talk to the SEC unless you get our clearance first. But you can't tell them you're not allowed to actually provide the SEC with any evidence. No, you can't. No, under the SEC's rule which came out, the SEC said no you can't tell them. If the SEC comes they have to cooperate. But can they provide them with documentary evidence? That regulation did not go to that point. That had to do with internal investigations and what can be revealed. But you were reading the rule to be you may tell the SEC but you may not provide them with documentary evidence. I'm reading the rule to say that company documents belong to the company regardless of the reason an employee may not take them without authorization. It seems as though that's in some tension with protection for whistleblowing, right? Because what good is it to the SEC if people can go to the SEC but they can't bring any evidence? Because there are both civil and criminal mechanisms for obtaining those documents. And unless the judge or the ALJ was talking about some courts have talked about a reasonableness test. It's reasonable to think the documents are going to be destroyed. The ALJ said that Ms. Gunther had a reasonable belief documents were going to be destroyed on the basis of nothing more than an employee in the company was using a shredder. That can't be the basis for a reasonable belief. Well, shredding documents that were relevant to her inquiry. No, she didn't know that. Just shredding documents, period. In the record that she said that the documents that I was interested in were being shredded and then counsel later on says, well, they may have been copies but it wasn't just any old document. No, that's not true. Documents were being shredded. There was an investigation. They were documents having nothing to do with what she was concerned about. And the ALJ found that. The ALJ found that the documents that were being shredded did not concern the inquiry. As a matter of fact, but I don't think the ALJ found that she did not subjectively or reasonably believe they might be the documents. The ALJ, in fact, did find that she had a reasonable belief. That was my point earlier, which is the mere use of a shredder in an office setting can't be the... That's not in the inquiry, though. If there's a finding and there's substantial evidence for it, whether we would have agreed with it or not, that the plaintiff thinks that documents relevant to the claim were being destroyed that there's a reasonable basis in that circumstance for the plaintiff to preserve the documents. There are courts that have held that, yes. Anything else? No. Thank you very much. I appreciate counsel's argument in this case. We'll come down and greet counsel
judges: G. Steven Agee, Pamela A. Harris, Theodore D. Chuang